**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **DAVID L. MASON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-cv-10** |
| | ) | **(Phillips)** |
| **USEC, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court on defendant USEC, Inc.'s Motion for Summary Judgment [Doc. 56] and accompanying documents [Docs. 57, 58], filed under seal. Plaintiff responded in opposition [Docs. 80-82], and defendant replied [Doc. 88]. For the reasons that follow, defendant's motion is **GRANTED.**

**I.      BACKGROUND**

Defendant USEC, Inc. ("USEC") is a private company, formerly part of the Department of Energy ("DOE"), engaged in uranium enrichment. It is one of four uranium enrichment organizations worldwide and the only such organization currently operating in the United States. USEC operates a nuclear centrifuge plant in Oak Ridge, Tennessee.

Plaintiff David L. Mason, Ph.D., began employment with USEC on June 30, 2000, as the Project Director for the classified American Centrifuge Project. Responsible for overseeing the project's daily operations, plaintiff had four major functions: maintaining costs, maintaining schedule, managing employees, and meeting the DOE's regulatory requirements.

-1-

Due to the nature of USEC's enterprise, DOE heavily regulates and monitors USEC's operations; DOE additionally owns the technology that USEC uses. DOE possesses the authority to initiate and conduct investigations regarding compliance with its regulations and to impose the appropriate disciplinary sanctions, including civil and criminal penalties, for infractions. *See* 10 C.F.R. §§ 820.1–820.81. Pursuant to this regulatory authority, information and materials at USEC are subject to DOE's classification requirements. Under DOE's classification rubric, Derivative Classifiers ("DCs") "mak[e] classification decisions based upon classification guidance" issued by the DOE. 48 C.F.R. § 952.204-70. All information and materials relating to the American Centrifuge Project were subject to the stricter "Born Classified" rule, under which information was to be presumed classified unless and until definitely proven otherwise. Where the classification applicable to a piece of information or material was unclear, the Born Classified rule required employees to treat the information or material as classified and seek DC review for guidance as to further treatment.

At the heart of this lawsuit are several security breaches that occurred at USEC's Oak Ridge facility, stemming from disregard of the Born Classified Rule. For example, on October 16, 2004, a document was transmitted via fax for which DC review had not been obtained. Subsequently, on December 1, 2004, a security incident occurred involving unsecured computers. It appears that these were among several continuing security violations at USEC's Oak Ridge plant. Accordingly, a "stand down," or temporary work stoppage, was ordered, and further training was conducted regarding the handling of classified information.

On May 17, 2005, representatives of USEC met with DOE officials to discuss the DOE's concerns about ongoing security breaches at USEC. At this meeting, the DOE appointed Richard

Coriell, a Security Manager at USEC, as DOE's "Inquiry Official," charged with investigating these alleged breaches over the past year. In further response to this meeting, Senior Vice President Phil Sewell directed plaintiff to order an immediate stand down on the American Centrifuge Project.

Mr. Coriell began his investigation of the security breaches, which included interviews with USEC employees. Displeased with the conduct of the investigation and the overall atmosphere at USEC's Oak Ridge facility, on June 20, 2005, plaintiff and DC Tony Angelleli each filed a complaint against three management individuals whom they believed acted in an unethical manner. In his complaint, [Doc. 58, "SJ Exhibit 2," Attach. #63], plaintiff outlined his own "Chronology of Events," beginning in 2003 and continuing through the May 2005 stand down and Mr. Coriell's subsequent inquiry. Plaintiff asserted that three individuals in management were retaliating against him, apparently for a previously filed complaint, and complained that the interrogation launched by Security staff (apparently Mr. Coriell's DOE-sanctioned inquiry) had besmirched his reputation and damaged his and his team's morale. Plaintiff further asserts a "misrepresentation of the facts as to how USEC got into this current predicament."[1] [*Id.*]. USEC commenced a separate investigation of plaintiff's complaint.

In July 2005, Mr. Coriell presented his report of his investigation to DOE [Doc. 58, "SJ Exhibit 6," Attach. C], in which he found that security lapses had occurred and recommended security infractions be issued to plaintiff and others. Upon completion of the separate investigation

_____

[1] There is much disagreement over the root cause of the security breaches. Apparently the atmosphere at USEC's Oak Ridge facility was quite negative, and many workers believed the classification system to be poorly implemented and executed. The operations were falling far behind schedule, and many employees felt this was due to poor management in the Security and Classification department. Those employees, including plaintiff, also felt like the problem was compounded as they were targeted during the investigation. [*See* Doc. 58, "SJ Exhibit 2," Attachs. #61, 63.]

-3-

of plaintiff's ethical complaints, Mr. Toelle and Mr. Anzelmo also recommended corrective actions be taken, likewise including the issuance of security infractions against plaintiff and others.

On September 30, 2005, plaintiff was advised that his services were no longer needed and that his employment would end. The parties signed a severance agreement, under which plaintiff's employment would effectively end on October 7, 2005. On that date, plaintiff signed a security termination statement, in which he acknowledged that his security clearance would be terminated. DOE effectuated this termination of plaintiff's security clearance on October 13, 2005. On October 24, 2005, USEC submitted a "Corrective Action Plan" and a list of security infractions to DOE.

On or about May 11, 2005, while in the process of seeking a security clearance for his new employment, plaintiff discovered defendant's report to the DOE that he committed security infractions. There had been no mention by USEC to plaintiff of any alleged security violations committed by plaintiff, and plaintiff vigorously disputes that he committed any. Plaintiff asserts that at the time the severance agreement was entered into, defendant wrongfully withheld the reporting of these infractions from him; had he known of the report, he would not have entered into the severance agreement. Further, although plaintiff apparently does not dispute the routine termination of his security clearance upon ending his employment at USEC, he contends that these allegedly false statements have precluded him from obtaining a security clearance at his new employment and will affect other future employment prospects.[2]

_____

[2] A security clearance, more specifically a "Q" security clearance, is essential in plaintiff's line of business. Holding such a clearance is a prerequisite for individuals such as plaintiff to be able to obtain and maintain full employment at certain DOE facilities and with certain DOE contractors and subcontractors for purposes of performing consulting work and/or other tasks of employment. A "Q" clearance is "the Department of Energy's highest level of security clearance" and can "take[] up to two years to obtain." *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008); *see also* 10 C.F.R. § 1016.3(a)(1).

On November 1, 2006, plaintiff filed suit against USEC in the Circuit Court for Anderson County, Tennessee. Defendant was served on December 14, 2006, and on January 1, 2007, defendant removed the action to this court, this court's jurisdiction being premised on diversity of citizenship.

Plaintiff's Third Amended Complaint [Doc. 44] alleges the following claims: (1) intentional/reckless interference with business relationships, (2) a deceptive act and/or trade practice, (3) inducement to breach a direct or implied contract between plaintiff and the DOE, (4) defamation by means of libel and slander, (5) breach of the implied duty and obligation of good faith of the employer with regard to the separation agreement between plaintiff and defendant, and (6) fraudulent inducement to contract. In a Memorandum and Order filed August 27, 2007 [Doc. 16], this court dismissed as time barred plaintiff's claim for slander, while allowing plaintiff's action to proceed on the remaining claims. Defendant now moves for summary judgment on these remaining claims.

## II.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion—in this case, the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The sufficiency

of the evidence at summary judgment is guided by the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Because the instant case is governed by the preponderance of the evidence standard, this court must ask itself "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252. This does not mean that the evidence must dictate a verdict for plaintiff; rather, a genuine issue of material fact exists if there is sufficient evidence, beyond a "mere scintilla," that a jury *could* return a verdict for plaintiff. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to demonstrate the existence of genuine issues of material fact. *Id.* at 324. The nonmoving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file ....' " *Id.* If the nonmoving party fails to meet this burden, the moving party is entitled to summary judgment.

"Where, as here, federal jurisdiction is based upon diversity of citizenship, [the court] applies the law of the forum state." *Estate of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 404 (6th Cir. 2005). The parties do not dispute that Tennessee law governs this case.

## III.    ANALYSIS

### A.    Validity of Severance Agreement

Defendant argues that the severance agreement bars all of plaintiff's claims, "as each one arises out of or relates to USEC's reports of Mason's actions taken while employed by USEC." [Doc. 56 at 20].  Plaintiff argues that the severance agreement does not bar suit, apparently disputing the validity of the agreement as a whole, based on claims of fraudulent inducement to contract and breach of duty of good faith and fair dealing.

#### 1.    Fraudulent Inducement to Contract

In Tennessee,

> [t]he five elements of an action for fraudulent inducement to contract are:  (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for the truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; [and] (5) an injury resulting from the reliance.

*Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000).

Plaintiff has failed to state a claim for fraudulent inducement to contract.  The essence of plaintiff's claim is that at the time the parties entered into the severance agreement, defendant knowingly made false statements regarding plaintiff to the DOE, without informing plaintiff of this action.  [Third Am. Compl., Doc. 44 at 2].  Plaintiff's claim thus fails, as without an affirmative statement to him, he cannot allege the requisite element of reliance upon a false statement.

The court's inquiry does not, however, end here.  The essence of plaintiff's allegation is that defendant's failure to disclose the reports of security infractions fraudulently induced him to sign the severance agreement; had plaintiff known of these reports, he would "not have signed the severance agreement."  [Doc. 82 at 7].  It is well established under Tennessee law that "fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or

-7-

nondisclosure of a known fact when there is a duty to disclose." *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997). The Sixth Circuit has summarized the five elements under Tennessee law that plaintiff must prove to recover for fraud based upon a claim of intentional failure to disclose a material fact:

> (1) that [defendant] concealed or suppressed a material fact, (2) that [defendant] had a duty to disclose that fact to [plaintiff], (3) that [defendant] intentionally concealed or suppressed that fact with the intent to deceive [plaintiff] (4) that [plaintiff] was unaware of the fact and would have acted differently if [he] had known about the concealed fact, and (5) that [plaintiff] was damaged as a result of the concealment or suppression of the fact.

*Saltire Indus., Inc. v. Waller, Landsen, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007).

Plaintiff has failed to allege the requisite elements of fraud due to failure to disclose; most importantly among these shortcomings, plaintiff has failed to establish that defendant had a duty to disclose its report of security infractions to DOE to plaintiff. Tennessee has recognized three distinct relationships where a duty to disclose exists:

> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
>
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class.

*Jackson*, 955 S.W.2d at 616-17, *quoted in Saltire*, 491 F.3d at 528.

A review of the record, and indeed the very nature of the termination of plaintiff's employment, shows that plaintiff was an employee at will who enjoyed no fiduciary relationship with his employer. "The employment-at-will doctrine has been a part of Tennessee's common-law legal tapestry for more than a century. The doctrine recognizes the concomitant right of either party to terminate such a relationship with or without cause." *Bennett v. Steiner-Liff Iron & Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992). This illustrates the arms-length nature of the relationship, and

it is clear that such a relationship does not fall under any of the categories of fiduciary relationships upon which a duty to disclose is imposed. *Cf. Klein v. May*, No. 86-184-II, 1986 WL 12177, at *2-3 (Tenn. Ct. App. Oct. 31, 1986) (no confidential relationship or repose of trust in confidence in an employment-at-will relationship). The parties did not enjoy a "previous definite fiduciary relation," and clearly plaintiff did not repose such trust or confidence in defendant such that defendant had a duty to disclose its DOE report. "The most common relationships giving rise to a finding of a confidential relationship or one of trust and confidence are trustee and beneficiary, attorney and client, parent and child, guardian and ward, physician and patient, nurse and invalid, or confidential friend and advisor." *Id.* at *3. Clearly an employment-at-will is not comparable to any of these relationships. Finally, the employer/employee relationship bears no resemblance to a contract that is intrinsically fiduciary, such as an insurance contract. These categories not befitting the relationship between the parties, the court finds that defendant was under no duty to disclose its report of security infractions to plaintiff when negotiating the severance agreement.

In sum, plaintiff has failed to state a claim for fraudulent inducement to contract, more appropriately considered as a claim for intentional failure to disclose a material fact, and defendant's Motion for Summary Judgment is granted with regard thereto.

### 2. *Breach of Duty of Good Faith and Fair Dealing*

Plaintiff further argues the invalidity of the severance agreement due to defendant's breach of the duty of good faith and fair dealing. In Tennessee, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract. Thus, each party to a contract promises to perform its part of the contract in good faith." *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l*

*Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996); *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004)).  Plaintiff relies on this implied covenant to attack the validity of the agreement itself, arguing that he "would definitely not have signed the severance agreement had he known USEC would be filing security infractions against him that would affect his future employment at DOE....  Therefore, entrance into the severance agreement was not conducted by USEC in good faith." [Doc. 82 at 8-9].  It is readily apparent from these arguments that plaintiff's claim for breach of duty of good faith goes to the *formation* of the contract, not the *performance* of the contract.

Plaintiff's claim for breach of duty of good faith and fair dealing must therefore fail.  While there is a "duty of good faith and fair dealing as it pertains to the *performance* of a contract," *Barnes*, 195 S.W.3d at 642 (emphasis added), "Tennessee courts ... have not recognized a duty to *negotiate* in good faith *absent an express contractual agreement to do so*," *id.* at 643 (emphasis added).  Plaintiff alleges a duty of good faith and fair dealing and the subsequent breach thereof in negotiating and forming the severance agreement.  As there was no express contractual agreement between the parties to do so, there was no duty to negotiate in good faith.  Accordingly, there is no basis by law for which plaintiff can recover, and defendant's Motion for Summary Judgment is granted with regard to plaintiff's claim for breach of good duty and fair dealing.

3.    *Whether the General Release Bars Plaintiff's Claims*

Having found plaintiff's claims as to the validity of the severance agreement to be without merit, the severance agreement is valid.  The court must therefore determine whether the general

-10-

release included therein operates to bar plaintiff's claims. The agreement contains a general release provision, under which plaintiff

> does hereby remise, release, and forever discharge USEC ... of any and from any and all actions and causes of actions, suits, debts, claims and demands whatsoever in law and equity, which Employee ever had, now has, or which Employee ... may have, by reason of any matter, cause or thing whatsoever, from the beginning of Employee's employment with USEC up to and including the date of this Agreement, and particularly, but without limitation, any claims arising from or relating in any way to Employee's employment relationship or the termination of Employee's employment relationship with USEC, including, but not limited to, any claims which have been asserted, could have been asserted, or could be asserted now or in the future, including any claims under any federal, state or local laws, including, but not limited to, the United States Constitution, the Tennessee Constitution, [various federal and Tennessee employment laws,] or any other federal or state law or regulation.

[Doc. 58, "SJ Exhibit 2," Attach. #3].[3]  The court must examine this provision closely, as "a release is a contract" to which rules of contract construction apply, the cardinal of these being "to ascertain the intent of the parties." *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991).  Accordingly, "the scope and extent of a release depends on the intent of the parties as expressed in the instrument." *Sherman v. Am. Water Heater Co.*, 50 S.W.3d 455, 457 (Tenn. Ct. App. 2001).

In Tennessee, there are two types of releases.  "A general release covers all claim in existence and within the contemplation of the parties at the time of execution, while a limited release covers only particular matters or claims that would fairly come within the terms of the agreement." *Marlett v. Thomason*, No. M2006-00038-COA-R3-CV, 2007 WL 1048950, at *5 (Tenn. Ct. App. Apr. 5, 2007); *accord, e.g.*, *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974) ("A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release."); *Sherman*, 50 S.W.3d at 459 ("A general release such as the one under

---

[3] Clearly this provision is not a paragon of contract drafting.

consideration, not restricted by its terms to particular claims or demands, covers all claims between the parties which are in existence and within their contemplation at the time it is executed."). As the release purports to cover "all claims in existence and within the contemplation of the parties at the

time of execution," the court finds that the release at issue is, as it is labeled, a general release. *Cf. Sherman*, 50 S.W.3d at 456-57 (contract provision containing similar language which court found to be a general release).

Importantly, however, a general release "cannot operate prospectively so as to defeat an action, the cause of which might afterwards arise." *Id.* at 459 (quoting *Poster v. Andrews*, 189 S.W.2d 580, 582-83 (1943)). In other words, "a demand of which a party was ignorant when the release was given is not as a rule embraced therein." *Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989) (quotation omitted).

As plaintiff argues that he did not discover the actions underlying this suit until May 2005, the court finds that the release does not serve to bar plaintiff's claims.

## B. Absolute Privilege

Defendant argues that "[a]ll of Mason's claims must fail because USEC's report to DOE was absolutely privileged." [Doc. 56 at 14]. In support thereof, defendant relies on a number of cases from other circuits for its proposition that a private contractor conveying sensitive information to a governmental agency enjoys absolute immunity from state tort liability. [Doc. 56 at 13-15]. For example, defendant cites a Second Circuit case in which that court held,

> [W]hen a private contractor, hired to perform a quintessential governmental function, in the course of its official duties conveys information with possible national security implications to the agency charged with its oversight, that contractor is absolutely immune from state tort liability for claims resulting from that information-sharing.

-12-

*Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 175 (2d Cir. 2006).  The court held

that such immunity must apply even where "an injured party with an otherwise meritorious claim

[would] be denied compensation simply because he had the misfortune to be injured by an individual

entitled to immunity," as long as the accompanying benefits of immunity to the administration of

government outweighed the harm to individual citizens.  *Id.* (quotations removed).

The court finds this reasoning persuasive, and it does not appear that the Sixth Circuit has

explicitly rejected such a line of reasoning or even indicated that it would reject such a line of

reasoning if it were confronted with such a case.  Yet as the Sixth Circuit likewise has not explicitly

adopted this same line of reasoning, the court will entertain the substance of plaintiff's remaining

claims, each of which fails on the merits.

### C.    Intentional/Reckless Interference with Business Relationships

Plaintiff alleges that

> [d]efendant knew of [p]laintiff's prospective relationships with the Department of Energy and/or its
> subcontractors in his line of business and intended to cause or recklessly caused future interference
> between Plaintiff and the Department of Energy and/or its subcontractors by improperly relaying false
> representations about [p]laintiff to the Department of Energy as explained above, which interference
> has caused damage to [p]laintiff's employability.

[Third Am. Compl., Doc. 44 at 4].  In his response brief, however, plaintiff makes clear that the

relationship for which he claims injury is his "business relationship with DOE."  [Doc. 82 at 11].

In Tennessee, the elements of intentional interference with business relationships are as

follows:

> (1) an existing business relationship with specific third parties or a prospective relationship with an
> identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere
> awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause
> the breach or termination of the business relationship; (4) the defendant's improper motive or improper
> means; and finally (5) damages resulting from the tortious interference.

-13-

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis and internal citation removed).

Plaintiff cannot succeed on this claim. "The merits of an executive branch decision to deny security clearance generally are not reviewable" due to principles of separation of powers and the importance of full executive control over national security. *Tenenbaum v. Caldera*, 45 F. App'x 416, 417-18 (6th Cir. 2002). Accordingly, "[a]bsent express congressional authorization, sensitive security clearance decisions should be free from interference by judicial officers with little expertise in the important complex realm of national security." *Id.* Concomitant with this discretion, a person does not hold a right to a security clearance. *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security clearance."); *accord, e.g., Carpenter v. Dep't of Energy*, No. 93-5396, 1994 WL 201872, at **2 (6th Cir. May 20, 1994) ("[T]here is no property right to a security clearance. Nor has [plaintiff] identified a protected liberty interest in this case." (inner citation removed)); *Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990) ("There is no right to maintain a security clearance, and no entitlement to continued employment at a job that requires a security clearance.").

Although plaintiff did not bring suit against the Department of Energy for the revocation of his security clearance, it is clear that this revocation is the basis of this suit. Plaintiff claims damages based on the revocation and the purported loss of the full panoply of employment which he would otherwise enjoy and seeks to have defendant "take all necessary steps to have [p]laintiff's security clearance reinstated." [Third Am. Compl., Doc. 44 at 6]. Yet under no circumstances can plaintiff meet the requisite element of proving that "*damages result[ed]* from the [allegedly] tortious interference" by defendant. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn.

-14-

2002) (emphasis added). As this court cannot inquire into the decision to revoke plaintiff's security clearance, plaintiff cannot prove causation, even assuming the falsity of USEC's reports. Furthermore, as there is no right to a security clearance, it is not clear whether plaintiff has suffered any legally cognizable damages.

Accordingly defendant's Motion for Summary Judgment is granted with respect to plaintiff's claim for intentional interference with business relationships.

**D.      Deceptive Act and/or Trade Practice**

Plaintiff alleges that defendant violated the Tennessee Consumer Protection Act of 1977 ("TCPA") by filing false security infractions against plaintiff. Specifically, in his Brief in Opposition to USEC's Motion for Summary Judgment, plaintiff argues that defendant " 'caus[ed] likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another' ... [by] confus[ing] the Department of Energy of connecting David Mason ... with ... a risk to our national security." [Doc. 82 at 11 (quoting Tenn. Code Ann. § 47-18-104(b)(3) (2008))]. The court finds that this provision does not apply to the alleged underlying acts.

The applicable statutory provision reads in full, "[T]he following unfair or deceptive acts or practices affecting the conduct of any *trade or commerce* are declared to be unlawful and in violation of this part: ... (3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another." *Id.* (emphasis added). "Trade" and "commerce" are terms of art, defined by the statute as "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." *Id.* § 47-18-103(11). "Goods" in turn are defined as "any tangible chattels leased, bought, or otherwise obtained for use

-15-

by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity." *Id.* § 47-18-103(5). "Services" involve "any work, labor, or services including services furnished in connection with the sale or repair of goods or real property or improvements thereto." *Id.* § 47-18-103(10).

Thus a close examination of the statute reveals that it is wholly inapplicable to plaintiff's claims. The acts complained of did not "affect[] the conduct of any trade or commerce," *id.* § 47-18-104(b), as "fraudulently confus[ing] the Department of Energy" as to whether plaintiff is a "risk to our national security" does not affect "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property," *id.* § 47-18-103(11). Even assuming that defendant confused the DOE about plaintiff's threat to our national security, the TCPA clearly provides no basis for plaintiff's recovery. Defendant's Motion for Summary Judgment is therefore granted with respect to plaintiff's claim for a deceptive act or trade practice.

### E. Inducement to Breach a Direct or Implied Contract Between Plaintiff and the Department of Energy

Plaintiff alleged inducement to breach a contractual relationship with the Department of Energy. Upon defendant's Motion for Summary Judgment, plaintiff concedes that defendant "is correct on that claim and that claim initially filed by the [p]laintiff should be summarily dismissed." [Doc. 82 at 13]. Accordingly defendant's Motion for Summary Judgment is granted with regard to plaintiff's claim for inducement to breach a contract between plaintiff and the Department of Energy.

**F.     Libel**

Finally, plaintiff alleges that defendant defamed him by libel.

> To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: (1) a party
> published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3)
> with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth
> of the statement.  "Publication" is a term of art meaning the communication of defamatory matter to
> a third person.

*Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (inner citation removed,

closing parentheses added).  As libel is a written form of defamation, *Hibdon v. Grabowski*, 195

S.W.3d 48, 58 (Tenn. Ct. App. 2005), to establish a case of libel, the "publication" in question must

be written.

Plaintiff alleges that defendant committed libel by distributing among members of USEC the

report made by Rick Coriell and later issuing security infractions based on this report to the DOE.

Mr. Coriell was at the relevant times to this action the Security Manager for USEC's American

Centrifuge Project.  [Doc. 58, "SJ Exhibit 6," at 1].  In May 2005, the DOE appointed Mr. Coriell

as the "Inquiry Official" with the authority to investigate the alleged security infractions that had

occurred at Oak Ridge.   [Doc. 58, "SJ Exhibit 6", Attach. A].   Mr. Coriell investigated the

infractions over the summer of 2005, "conducting interviews, reviewing documents, and determining

which classified information had been improperly disclosed."  [Doc. 58, "SJ Exhibit 6," ¶ 11].  Mr.

Coriell issued his findings in a written report to the DOE on July 7, 2005, [Doc. 58, "SJ Exhibit 6,"

Attach. C], in which he recommended that security infractions be issued to plaintiff, among others,

[Doc. 58, "SJ Exhibit 6," ¶ 21].  Later, on October 24, 2005, these infractions by plaintiff were

actually reported to DOE.  [Doc. 58, "SJ Exhibit 3," ¶ 14].  Plaintiff contends that the findings of

security infractions therein are false and defaming.

The court finds that plaintiff's libel claim fails, as he cannot establish that the statements were "published" in the legal sense of the word. In Tennessee, "[i]t is an elementary rule ... that publication is an essential element of a libel action without which a complaint must be dismissed." *Woods v. Helmi*, 758 S.W.2d 219, 222-23 (Tenn. Ct. App. 1988). Certain communications, for various policy reasons, are removed from the publication category. Importantly, "communications among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons." *Id.* at 223. This embodies the idea of a "need to know" channel in which employees communicate openly, "with the communication flowing through the proper chain of command, particularly in employee performance reviews or disciplinary actions." *Id.* Further, Tennessee extends this rule to persons in the "need to know" channel even though they are employed by different corporate entities. *Id.* at 223-24 ("This proper exchange of information should not be inhibited by the technical nicety that a person or persons who were in the "need to know" channel were employed by different corporate entities. The responsibilities and duties of the particular parties involved take precedent over the corporate entity that pays them their salaries.").

Certainly this rule applies to the entities at issue. Mr. Coriell conducted and distributed his report at the behest of DOE in response to various alleged security infractions. Although the DOE is a federal governmental agency and USEC is a private corporation, the policy reasons articulated in *Woods* for removing such distribution of information from the "publication" category apply here, indeed all the more so because the underlying action involves national security. Plaintiff worked in a highly classified and sensitive field in which security was of the utmost importance. The ability

-18-

to guard against infractions, to investigate freely when they allegedly occur, and to take the appropriate disciplinary actions to the extent there are infractions clearly falls within the purview of *Woods*: namely, they are communications made within the scope and course of employment relative to the duties performed within that employment. As *Woods* extended this rule to employees within the same "need to know" channel but within different corporations, it is of no import that DOE and USEC are separate entities. USEC operates its nuclear centrifuge plant under the strict regulatory authority of the DOE, and the "need to know" channel with regard to whether security infractions have occurred is obvious. Mr. Coriell's report clearly falls within that channel. Accordingly, the court finds that plaintiff has failed to establish the requisite publication element of a libel claim, and defendant's Motion for Summary Judgment is granted with regard to plaintiff's claim for libel.


IV.     **CONCLUSION**

        In accordance with the foregoing, defendant's Motion for Summary Judgment [Doc. 56] is **GRANTED**, whereby plaintiff's complaint is **DISMISSED**.

                **IT IS SO ORDERED**.


                        **ENTER:**


                        _____s/ Thomas W. Phillips_____
                             United States District Judge